1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK L. EDWARDS,

        Petitioner,

     v.

GARY SWARTHOUT, Warden,

        Respondent.
_____/

No. C 10-4923 PJH

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

     Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254, filed by state prisoner, Mark L. Edwards ("Edwards").  Having reviewed the parties'
papers, the record, and having carefully considered their arguments and the relevant legal
authorities, the court DENIES the petition.

<b>BACKGROUND</b>

**A.    Procedural Background**

     A jury in the Contra Costa County Superior Court convicted Edwards of (1) evading
a peace officer and causing serious bodily injury under California Vehicle Code § 2800.3,
and (2) and driving under the influence ("DUI") causing injury under Vehicle Code §
23153(a).  The jury further found two great bodily injury enhancements related to the DUI to
be true.  The court also found true two other allegations, including that Edwards had
committed a prior DUI offense within ten years of the current offense, and that he had a
prior serious felony conviction and a prior strike conviction based on a 1994 robbery
conviction.

     The court sentenced Edwards to a term of seventeen years imprisonment,

United States District Court

For the Northern District of California

1 consisting of six years for the DUI conviction, based in part on the prior "strike" offense;

2 three years each for two great bodily injury enhancements; and five years for a prior

3 serious felony conviction.  The court also imposed a five-year concurrent sentence for the

4 evading a peace officer conviction.

5      Edwards appealed to the California Court of Appeal, which affirmed his conviction

6 and sentence on December 18, 2009.  The California Supreme Court denied review on

7 March 10, 2010.  On October 29, 2010, Edwards filed this federal habeas petition.

8 **B.    Factual Background**

9      Edwards was charged and tried as a result of his role in an August 15, 2006 high-

10 speed police chase and car crash near the border of El Cerrito and Richmond, California.

11 Several people were injured in the crash, including Edwards, who was subsequently

12 hospitalized.  The charges for which Edwards was convicted related to injuries received by

13 Cynthia Pierce and Lawanda Wadley, both passengers in the vehicle Edwards was driving.

14      At the time of the crash, Edwards was driving his girlfriend's SUV, and Pierce and

15 Wadley were passengers in the SUV.  The other vehicle involved in the crash, a Nissan

16 Murano, carried three people, including its driver Deandre Kincaid, and two passengers,

17 Marsha Long and Aaron Powell.

18      Two different blood samples were drawn from Edwards after the accident, one at

19 9:40 p.m., approximately one hour after the accident, and one at 2:20 a.m., approximately

20 six hours after the accident.  Based on these samples, one prosecution witness estimated

21 that Edwards' blood alcohol content ("BAC") was approximately .238 at the time of the

22 accident, and another estimated that his BAC was .266 more than one hour after the

23 accident.

24      San Pablo Police Officer Timothy Cauwels witnessed the events immediately

25 preceding the crash.  Cauwels was parked in his marked patrol car at an intersection in

26 San Pablo, California at approximately 8:30 p.m. when he heard the SUV revving its

27 engine.  The SUV subsequently entered the intersection, approaching Cauwels' vehicle,

28

**United States District Court**
For the Northern District of California

1   ran a red light, and narrowly missed hitting another car.  Cauwels made a u-turn and turned

2   on his patrol car's overhead lights, and the SUV pulled over.  As Cauwels began making a

3   radio dispatch regarding the traffic stop, the SUV sped away.  Cauwels turned on his

4   flashing lights and siren and pursued the SUV, which was accelerating quickly.  Cauwels

5   observed that within just a few blocks, the SUV was traveling at approximately 80 miles per

6   hour and had run two more red lights.

7        At an overpass near Richmond, California, Cauwels terminated the pursuit as the

8   SUV now traveled at approximately ninety to one hundred miles per hour in a thirty mile per

9   hour speed zone. Cauwels lost sight of the SUV for a moment as it traveled over the

10  overpass, but just a few seconds later, Cauwels observed a huge cloud of smoke.  When

11  he arrived at the scene soon after, Cauwels saw that two cars, including the SUV and a

12  Nissan Murano, were completely destroyed, bodies were laying in the roadway, and oil,

13  fluids, and other car parts were "everywhere."

14       Edwards was one of three bodies Cauwels observed on the ground at the scene.

15  Cauwels quickly checked the three bodies, but mistakenly believing all three were dead,

16  went to help three additional people who were screaming and trapped inside the Nissan,

17  which was resting on its side.  Cauwels freed the three people in the Nissan, and then

18  returned to help the victims on the ground.

19       Two of the victims on the ground had regained consciousness, and appeared to be

20  moving.  Cauwels asked the two women who was driving the SUV, and both women

21  pointed at Edwards, who was laying unconscious nearby.  Some of the victims were taken

22  to the hospital by helicopter, and others were taken by ambulance.

23       In addition to Cauwels, Richmond Police Sergeant Andre Hill responded to the

24  scene of the accident.  Sergeant Hill's investigation revealed that Edwards' SUV was

25  traveling southbound on the overpass at a high rate of speed, that Edwards lost control, the

26  SUV crossed over the double yellow line and traveled into the northbound lanes of traffic,

27  and struck the Nissan.  The debris and damage to the vehicles demonstrated that the SUV

28

had been traveling at a significant velocity.  Hill determined that Edwards was at fault, that

his intoxication was the primary cause of the crash, and that an additional factor was his

failure to drive on the correct side of the road and his crossing a divided highway.

One of the female victims, Pierce, was hospitalized for four days after the accident.

She suffered from neck and back pain after the accident for approximately two and a half

weeks to a month, was given a neck brace to wear, and received four stitches to her head.

The other female victim, Wadley, also was hospitalized for approximately four days after

the accident.  She received stitches to her head, had a leg injury that required a splint, and

was required to use a walker for approximately two weeks after the accident.

## ISSUES

Edwards raises the following two claims, both of which he raised before the

California appellate courts on direct appeal:

(1) that his Due Process rights were violated because the phrase "great bodily injury"

as defined by California Penal Code § 12022.7 is unconstitutionally vague on its face

and as applies to him; and

(2)  that the Fifth Amendment Double Jeopardy Clause was violated because he

was convicted and punished twice for causing the same injuries to the same people.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on

the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09, (2000),

while the second prong applies to decisions based on factual determinations, *Miller–El v.*

United States District Court

For the Northern District of California

1    *Cockrell*, 537 U.S. 322, 340 (2003).

2        A state court decision is "contrary to" Supreme Court authority, that is, falls under the

3    first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

4    reached by [the Supreme] Court on a question of law or if the state court decides a case

5    differently than [the Supreme] Court has on a set of materially indistinguishable facts."

6    *Williams (Terry)*, 529 U.S. at 412–13.  A state court decision is an "unreasonable

7    application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it

8    correctly identifies the governing legal principle from the Supreme Court's decisions but

9    "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413. The

10   federal court on habeas review may not issue the writ "simply because that court concludes

11   in its independent judgment that the relevant state-court decision applied clearly

12   established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

13   be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

14        A state court's determination that a claim lacks merit precludes federal habeas relief

15   so long as "fairminded jurists could disagree" on the correctness of the state court's

16   decision.  *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011) (citing *Yarborough v.*

17   *Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]valuating whether a rule application [i]s

18   unreasonable requires considering the rule's specificity. The more general the rule, the

19   more leeway courts have in reaching outcomes in case-by-case determinations."  *Id.* "As a

20   condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must

21   show that the state court's ruling on the claim being presented in federal court was so

22   lacking in justification that there was an error well understood and comprehended in

23   existing law beyond any possibility for fairminded disagreement."  *Id.*

24        Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

25   determination will not be overturned on factual grounds unless objectively unreasonable in

26   light of the evidence presented in the state-court proceeding."  *Miller–El*, 537 U.S. at 340.

27   Review under § 2254(d)(1) is limited to the record that was before the state court that

28

**United States District Court**
For the Northern District of California

adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington*, 131 S.Ct. at 784–85. When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991).

**DISCUSSION**

**A.     Vagueness Claim**

Edwards raises the same claim in his federal habeas petition that he raised before the California courts on direct appeal. He argues that the phrase "great bodily injury," as defined by California Penal Code section 12022.7, subdivisions (a) and (f), is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and also is unconstitutional as applied to him. Those sections provide in pertinent part that:

> (a) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years.
> . . . .
>
> (f) As used in this section, "great bodily injury" means a significant or substantial physical injury.

Under California law, for a "great bodily injury" to have occurred, the victim need not have suffered a permanent or prolonged injury, disfigurement, or impairment. *See People v. Escobar*, 3 Cal.4th 740, 750 (Cal. Sup. Ct. 1992); *People v. Cross*, 45 Cal.4th 58, 64 (Cal. Ct. App. 2008). The question of whether a victim has suffered physical harm amounting to a "great bodily injury" is a factual inquiry to be resolved by the jury. *Id.* "Proof that a victim's bodily injury is 'great' . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." *Id.* at 66.

**1.     State Court Ruling**

The California Court of Appeal rejected Edwards' facial and as applied vagueness

challenges to the statute under both the United States and the California Constitutions.

The court held as follows regarding Edwards' facial challenge to section 12022.7:

> In his opening brief, defendant argues that the definition of 'great bodily injury' contained in section 12022.7 is unconstitutionally vague on its face.  Although he takes some care in outlining the United States Supreme Court's discussion of the 'void-for-vagueness' doctrine in criminal cases, relying heavily on *Kolender v. Lawson*, 461 U.S. 352 (1983) (*Kolender*), he presents a very spare argument for his position regarding section 12022.7. Essentially, he poses a few hypothetical questions about different types of injuries, and cites *People v. Nava,* 207 Cal.App.3d 1490 (1989), in which the appellate court found that the trial court committed instructional error when it instructed the jury that a bone fracture was a 'great bodily injury' pursuant to section 12022.7, as this usurped the function of the jury.  *Id.* at 1495, 1497-1499. Defendant concludes that under *Kolender* this approach 'virtually entrusts lawmaking to the jury, and hence the statute is unconstitutional.' According to defendant, we must find section 12022.7 unconstitutional because it does not 'establish minimal guidelines to govern law enforcement' pursuant to *Kolender*'s instruction. 461 U.S. at 357-358. Therefore, the true findings of the 12022.7 enhancements attached to count two should not be allowed to stand.

> We disagree. The instructional error analysis in *People v. Nava*, 207 Cal.App.3d 1490, is not relevant to the constitutional question defendant raises here; if anything, it stands for the proposition that determining whether an injury satisfies section 12022.7 is a jury function. On the other hand, in his opening brief, defendant, other than citing *People v. Cross*, 45 Cal.4th 58, ignores the ample California case law that has upheld the constitutionality of 'great bodily injury' or equivalent language. For example, in *People v. Guest*, 181 Cal.App.3d 809 (1986), the court rejected a claim 'that section 12022.7 is unconstitutionally vague because one cannot tell from instance to instance what injuries will be considered significant or substantial enough to constitute great bodily injury.' *Id.* at 811. The court explained:

>> The orthodox test under the United States or California Constitutions for unconstitutional vagueness is whether the statute 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application [,] [violating] the first essential of due process of law.'  However, 'a statute is sufficiently certain if it employs words of long usage or with a common law meaning, notwithstanding an element of degree in the definition as to which estimates may differ.' As we have stated . . . , 'We are persuaded by the long acceptance of great bodily injury as a term commonly understandable to jurors that it has not acquired a technical legal definition requiring in the absence of special circumstances a clarifying instruction.' While the defendant may be correct in that an 'I know it when I see it' standard is applied to injuries under section 12022.7, men of

United States District Court

For the Northern District of California

common intelligence can apply these words of long usage to discern what injuries they are forbidden to inflict under pain of enhancement. . . .  Section 12022.7 is constitutional.

*People v. Guest*, 181 Cal.App.3d at 811-812.

In *People v. Maciel*, 113 Cal.App.4th 679 (2003) (*Maciel*), the court also found that the phrase 'great bodily injury' contained in section 12022.7 is not vague. The court acknowledged that a penal statute must define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement.  *Id.* at 683.  If a criminal statute is not sufficiently certain and definite, it is unconstitutionally vague.  *Id.* The court found that 'the phrase 'great bodily injury' standing alone is not vague. The term 'great bodily injury' has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration.'  *Id.* at 686. The *Maciel* court quoted the definition contained in section 12022.7, subdivision (f), of 'great bodily injury' as 'a significant or substantial physical injury,' and stated that the phrase was 'sufficiently certain and definite to meet the constitutional requirements' and avoid vagueness.'  *Id.* at 686; *see also People v. La Fargue,* 147 Cal.App.3d 878, 886-887 (1983) ('[t]he term 'great bodily injury' has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration'); *People v. Roberts*, 114 Cal.App.3d 960, 962-963 (1981) (finding 'great bodily injury,' as used in Penal Code section 245, subdivision (a), was not unconstitutionally vague).

The People cite most of these cases in their respondent's brief.  In his reply brief, defendant argues that the cases relied upon by the People 'did not address the constitutionality of Penal Code section 12022.7 in light of *Kolender*, 461 U.S. 352.  *Kolender* is controlling authority on the issue, and merits some consideration.'  Defendant does not explain why he failed to inform this court in his opening brief about California cases that have ruled on the very issue he raises here. Regardless, his effort to distinguish these cases based on *Kolender* is unpersuasive.

Defendant correctly points out that in *Kolender*, 461 U .S. 352, the United States Supreme Court found that the requirement that a suspect loiterer provide 'credible and reliable' identification to a peace officer to account for his presence, as provided for in section 647(e), was unconstitutionally vague. In doing so, the court, relying in part on its previous ruling in *Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) (*Hoffman Estates*), noted, 'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' *Kolender*, 461 U S. at 357-358.  Furthermore, the majority in *Kolender*, in distinguishing its view from Justice White's dissent, stated that his description of the court's previous holdings as requiring that a statute be held unconstitutionally vague only if it was vague 'In all its possible applications was inaccurate in several respects.' *Id.* at 358-59 n 8.  Relying again on *Hoffman Estates*, the majority stated that this description 'neglects the fact that we permit a facial challenge if a law reaches a substantial amount of constitutionally protected conduct.' *Id.* at 359

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

n. 8. The majority also stated that 'where a statute imposes criminal penalties, the standard of certainty is higher. This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application.' *Id.*

The Supreme Court's discussion makes clear that *Kolender*, 461 U.S. 352, rather than chart a new direction as defendant suggests, merely summarized and clarified its previous holdings, including its discussion in *Hoffman Estates*, 455 U.S. 489. Defendant also fails to explain how the court's treatment of the language and statute involved in *Kolender* has any real bearing on the language he challenges here, which, as we have indicated, has been employed for more than a century, and repeatedly been found to be constitutional.

Defendant makes a number of other unpersuasive arguments. First, he contends that *People v. Guest*, 181 Cal.App.3d 809, is somehow inapposite because the court relied on the long usage and commonly understood meaning of 'great bodily injury.' *Id.* at 811. According to defendant, '[l]ong usage or common usage . . . plays no significant role in a vagueness analysis after *Kolender*.' We fail to see how this is the case from our reading of *Kolender*. Indeed, as we have discovered in our independent research, after *Kolender*, the Fourth District rejected a void-for-vagueness challenge to the phrase 'great bodily injury,' as used in Penal Code section 273ab, based on long usage, and with *Kolender*, 461 U.S. 352, in mind. In *People v. Albritton*, 67 Cal.App.4th 647 (1998) (*Albritton*), the Fourth District quoted *Kolender*'s 'sufficient definiteness' requirement, as well as the requirement stated in *People v. Heitzman*, 9 Cal.4th 189 (1994), that a criminal statute 'be definite enough to provide a standard of conduct for those whose activities are proscribed,' and 'provide definite guidelines for the police . . . to prevent arbitrary and discriminatory enforcement.' *Albritton*, 67 Cal.App.4th at 656-657. The court also correctly pointed out that '[t]he starting point of our analysis is the strong presumption that legislative enactments must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.' *Id.* at 657. The Fourth District rejected Albritton's argument that the phrase 'great bodily injury' was vague because it could cover 'a multitude of injuries ranging from a cut lip to broken bones,' noting that, as we have discussed, the term 'has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration.' *Id.* at 658 (quoting *People v. La Fargue*, supra, 147 Cal.App.3d at pp. 886-887.)

Defendant also argues that the court in *People v. Maciel*, 113 Cal.App.4th 679, should be ignored, because it employed the 'vague in all its applications' test, *id.* at 683, that is intended for civil, but not criminal cases, as stated in *Kolender*, 461 U.S. at 358-359 n. 8. We do not necessarily agree that *Kolender* rejects the application of this test in all criminal cases, but need not determine this issue. Defendant's argument is unpersuasive because *Maciel* did not directly apply this standard, instead looking to the long usage of the phrase 'great bodily injury' and previous case law to conclude that it was not unconstitutionally vague. 113 Cal.App.4th at 686.

9

Finally, as the People point out, after *Kolender*, 461 U.S. 352, the United States Supreme Court decided *James v. United States,* 550 U.S. 192 (2007), which also provides some support for our conclusion here.  In *James*, the majority, relying in part on the court's discussion in *Kolender*, rejected Justice Scalia's dissenting argument that the phrase 'serious potential risk of physical injury' was unconstitutionally vague.  *James*, 550 U.S. at 210 n. 6. In doing so, the court relied in part on similar formulations in federal and state criminal statutes, including California's Health and Safety Code section 42400.3, subdivision (b), which criminalized air pollution that 'results in any unreasonable risk of great bodily injury. . .' *Id.* at 210.  Defendant argues that this analysis focuses on statutes involving risk of great bodily injury, rather than great bodily injury itself, and also cites *People v. Roberts*, 114 Cal.App.3d at 964 (distinguishing between cases involving assaults in which there is a likelihood that great bodily injury will result and those involving enhancements for the actual injury inflicted).  We do not think this distinction is as relevant, however, as the fact that the *James* majority summarily dismissed Justice Scalia's 'void-for-vagueness' argument.

The California Court of Appeal then held as follows regarding Edwards' as applied challenge to section 12022.7:

Defendant's argument that section 12022.7 is void for vagueness as applied to him in this case is also without merit. Defendant does not provide any meaningful legal analysis. Instead, relying again on the inapposite instructional error discussion in *People v. Nava*, 207 Cal.App.3d 1490, and on his minimizing of the injuries to Pierce and Wadley, defendant appears to argue that if the jury had been properly instructed pursuant to *Kolender*, 461 U.S. 352, it could have found that the injuries to Pierce and Wadley were not great bodily injuries.  However, there was ample evidence to support the jury's conclusion that the two suffered significant and substantial physical injuries. They lost consciousness, later received stitches to their heads, were hospitalized for days, and endured pain and/or significant physical limitations for weeks after the accident. We reject defendant's argument that under *Kolender*, his constitutional rights were somehow violated as a result of section 12022.7's application to his case.

## 2.    Legal Standards

A state criminal statute may be challenged as unconstitutionally vague by way of a petition for a writ of habeas corpus by a prisoner convicted under the statute.  *See Vlasak v. Superior Court of California*, 329 F.3d 683, 688-90 (9th Cir. 2003).  Outside the First Amendment context, a petitioner alleging facial vagueness must show that "the enactment is impermissibly vague in all its applications." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)); *Humanitarian Law Project v. United*

**United States District Court**
For the Northern District of California

1   *States Treasury Dept.,* 578 F.3d 1133 (9th Cir. 2009).  Additionally, "[u]nless First

2   Amendment freedoms are implicated, a vagueness challenge may not rest on arguments

3   that the law is vague in its hypothetical applications, but must show that the law is vague as

4   applied to the facts of the case at hand."  *United States v. Johnson*, 130 F.3d 1352, 1354

5   (9th Cir. 1997) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)).

6          "To satisfy due process, 'a penal statute [must] define the criminal offense (1) with

7   sufficient definiteness that ordinary people can understand what conduct is prohibited; and

8   (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling*

9   *v. United States*, 130 S.Ct. 2896, 2927–28 (2010) (quoting *Kolender v. Lawson*, 461 U.S.

10  352, 357 (1983)); *United States v. Kilbride*, 584 F.3d 1240, 1256–57 (9th Cir. 2009) (even

11  under heightened standards of clarity for statutes involving criminal sanctions, "due process

12  does not require impossible standards of clarity"); *see also Maynard v. Cartwright*, 486 U.S.

13  356, 361 (1988) ("[o]bjections to vagueness under the Due Process Clause rest on lack of

14  notice, and hence may be overcome in any specific case where reasonable persons would

15  know that their conduct is at risk").

16         A criminal statute is unconstitutionally vague when it "fails to give a person of

17  ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."

18  *United States v. Harriss*, 347 U.S. 612, 617 (1954); *see also United States v. Batchelder*,

19  442 U.S. 114, 123 (1979).  A statute will meet the certainty required by the Constitution if its

20  language conveys sufficiently definite warning as to the proscribed conduct when

21  measured by common understanding and practices.  *See Panther v. Hames*, 991 F.2d 576,

22  578 (9th Cir. 1993); *see also, e.g., Holder v. Humanitarian Law Project*, 130 S.Ct. 2705,

23  2719-21 (2010) (finding statutory terms "training," "expert advice or assistance," "service,"

24  and "personnel" in federal statute prohibiting knowingly providing material support to a

25  foreign terrorist organization provide fair notice because they do not require "untethered,

26  subjective judgments"); *United States v. Rodriguez*, 360 F.3d 949, 954 (9th Cir. 2004)

27  (Hobbs Act's definition of commerce is well-established and therefore not unconstitutionally

28

United States District Court

For the Northern District of California

1   vague); *Houston v. Roe*, 177 F.3d 901, 907-08 (9th Cir. 1999) (California's non-capital first

2   degree murder by lying in wait statute is not vague because it applies to slightly different

3   conduct than capital murder with the special circumstance of lying in wait and therefore the

4   two statutes do not encourage discriminatory or arbitrary enforcement).

5       In assessing whether a state statute is unconstitutionally vague, federal courts must

6   look to the plain language of the statute, as well as consider state courts' constructions of

7   the challenged statute.  *See Kolender*, 461 U.S. at 355; *see also United States v. Lanier*,

8   520 U.S. 259, 266 (1997) (noting that judicial opinions may clarify "an otherwise uncertain

9   statute"); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 941-42 (9th Cir. 1997). The

10  federal court is not bound by the state court's analysis of the constitutional effect of that

11  construction, however.  *See Nunez*, 114 F.3d at 942.  Nevertheless, it must accept a

12  narrow construction to uphold the constitutionality of a state statute if its language is readily

13  susceptible to it.  *See id.*

14      When a term has a well-settled common law meaning, it will not violate due process

15  "'notwithstanding an element of degree in the definition as to which estimates might differ.'"

16  *Panther*, 991 F.2d at 578 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391

17  (1926)).  For example, the fact that a penal statute requires a jury upon occasion to

18  determine a question of reasonableness is not sufficient to make it too vague to afford a

19  practical guide to permissible conduct.  *See id.* at 578-80 (use of "substantial risk" and

20  "gross deviation" to define prohibited conduct did not make Alaska criminal negligence

21  statute unconstitutionally vague) (quoting *United States v. Ragen*, 314 U.S. 513, 523

22  (1942)).

23      To avoid a vagueness challenge based on the potential for arbitrary enforcement,

24  statutes must include "minimal guidelines to govern law enforcement."  *Kolender*, 461 U.S.

25  at 358; *see also City of Chicago v. Morales*, 527 U.S. 41, 60 (1999). "Where the legislature

26  fails to provide such minimal guidelines, a criminal statute may permit a standardless

27  sweep that allows policemen, prosecutors, and juries to pursue their personal

28

**United States District Court**
For the Northern District of California

predilections." *Kolender*, 461 U.S. at 358.

In the *Kolender* case relied on by Edwards before the California appellate courts and before this court, as discussed below, the Supreme Court declared unconstitutionally vague a California anti-loitering statute requiring persons loitering or wandering the streets to provide a "credible and reliable" identification and to account for their presence upon police request.  461 U.S. at 358-59.  Although the law was deemed to violate the Due Process Clause of the Fourteenth Amendment because it failed to define what was meant by "credible and reliable," the *Kolender* Court also noted its concern that the challenged statute had the potential to suppress First Amendment rights. *See id.* at 357-63.

The petitioner in *Kolender* had been arrested fifteen times for disorderly conduct, prosecuted twice, and convicted once, under a California statute which provided that an individual had committed the offense if, he "loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." *Id.* (citing Cal. Penal Code § 647(e)).  The Supreme Court was concerned that by affording so much discretion to police in determining whether a suspect violated the anti-loitering law, the statute "furnishe[d] a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." *Id.* at 359.  The Court noted that the void-for-vagueness doctrine focuses not only on notice, but on whether the "legislature establish[ed] minimal guidelines to govern law enforcement."  *Id.* at 358.  Ultimately, the *Kolender* Court held that the state statute was unconstitutionally vague on its face because it "encourage[d] arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute."  *Id.* at 361.

### 3.    Parties' Arguments

As for his facial challenge, in his current petition, Edwards suggests that the state

United States District Court

For the Northern District of California

court of appeal applied state law cases and standards that were contrary to the Supreme Court's holding in *Kolender*.  He argues that for the same reasons the *Kolender* Court found California Penal Code § 647(e) unconstitutionally vague, so is section 12022.7. Edwards contends that the jury should not be permitted to decide what constitutes "great bodily injury" with no guidance "from the court at all."

The state responds that contrary to Edwards' suggestions otherwise, the California Court of Appeal correctly applied the law as set out by the Supreme Court in *Kolender*.  It asserts that the state court addressed *Kolender* at length, applying the legal standards taken directly from *Kolender*.  It further argues that it was not unreasonable for the state court to rely on long usage and common understanding for the term "great bodily injury" in finding that the language was not unconstitutionally vague.  It notes that in addition to *Kolender*, the state court also relied on the Supreme Court's decision in *James v. United States*, 550 U.S. 192 (2007).

In his traverse, Edwards challenges the California Court of Appeal's interpretation of its own case law.  He also disputes the state's contention that the state court applied *Kolender,* asserting that its decision makes no reference to the "minimal guidelines" required by *Kolender*.  Edwards argues that *Kolender* requires "minimal guidelines" so that juries such as his have guidance in applying phrases like "great bodily injury."

Regarding his as applied challenge, Edwards argues that a jury provided with the guidance required by *Kolender* could have found that the injuries attributed to him did not qualify as "great bodily injuries," and that § 12022.7 was therefore unconstitutional as applied to him.

The state responds that given the state court's holding regarding the nature of the victims' injuries, Edwards is unable to show that the court's conclusion was so lacking in justification as to entitle him to relief.

In his traverse, Edwards argues that the issue is not one of sufficiency of the evidence.  He contends that the jury was not given any standard to follow regarding the

**United States District Court**
For the Northern District of California

1   definition of "great bodily injury," and without any such guidance, the jurors could have

2   followed their own predilections, which he asserts may have been contrary to *Kolender.*

3       **4.    Analysis**

4       The state appellate court's decision that the statute was not facially

5   unconstitutionally vague was neither contrary to, nor involved an unreasonable application

6   of, clearly established federal law, as determined by the Supreme Court of the United

7   States, because California Penal Code § 12022.7 includes "minimal guidelines" to govern

8   those who apply the law. *See Kolender*, 461 U.S. at 358.  As described above, the statute

9   defines "great bodily injury" to include only "significant or substantial physical injury."

10  Additionally, California's "great bodily injury" standard jury instructions, as given in this

11  case, further explain that "minor" or "moderate" injuries do not constitute great bodily injury.

12  *See* R.T. 370-71 (giving CALCRIM 3160).  It was not unreasonable for the state appellate

13  court to conclude that these definitions provide sufficient guidelines for juries to follow.  *See*

14  *Kolender*, 461 U.S. at 358.

15      Edwards' assertion that the California Court of Appeal failed to reference *Kolender's*

16  "minimal guidelines" standard is entirely without merit.  The state court correctly and

17  expressly noted at the outset that Edwards' primary focus was not so much on the right to

18  notice as it was on the prohibition against arbitrary enforcement, and specifically on

19  *Kolender's* "minimal guidelines" requirement.  *See* Exh. F at 5-6.  The state court then

20  noted a number of state cases in which California courts have held that the phrase "great

21  bodily injury" or its equivalent was not unconstitutionally vague, and rejected Edwards'

22  suggestion that *Kolender* mandated a different result in those cases.

23      It was not unreasonable, as Edwards suggests, for the California Court of Appeal to

24  consider its own case law in assessing whether the statute was unconstitutionally vague, or

25  the common usage and acceptance of the phrase "great bodily injury."  *See Panther*, 991

26  F.2d at 578; *see also, e.g., Humanitarian Law Project*, 130 S.Ct. at 2719-21.  In fact, in

27  assessing whether a state statute is unconstitutionally vague, federal courts must consider

28

15

United States District Court

For the Northern District of California

state courts' constructions of the challenged statute. *See Kolender*, 461 U.S. at 355; *see also Lanier*, 520 U.S. at 266.  The court notes that numerous California appellate courts have repeatedly rejected the very challenge Edwards raises here, and the state court decisions cited by the appellate court in this case are not contrary to the United Supreme Court's decision in *Kolender.*  As the state court correctly noted, *Kolender* did not so much chart a new course in terms of federal constitutional law regarding the vagueness doctrine, as it clarified and built upon the Court's prior decisions in *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982), and *Smith v. Goguen*, 415 U.S. 566 (1974)).  *See Kolender*, 461 U.S. at 357-360.

Additionally, the California Court of Appeal's decision that as applied, § 12022.7 was not unconstitutionally vague, was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  First, an ordinary person plainly could understand that evading a police officer and driving a vehicle while intoxicated at least sixty miles per hour above the speed limit at ninety to one hundred miles per hour on local streets would constitute prohibited conduct.  Per California Penal Code section 12022.7(f), Edwards was on notice that causing any "significant or substantial physical injury" would subject him to criminal liability.  Moreover, given the two victims' injuries in this case, which included a loss of consciousness by both, hospitalization for several days, fractured vertebrae, and stitches, the jury's finding of "great bodily injury" cannot be deemed the result of its arbitrary exercise of personal predilections.

For these reasons, this claim fails.

**B.     Double Jeopardy**

Again, Edwards raises the same claim before this court that he raised before the California appellate courts on direct appeal.  He argues that the trial court's imposition of sentence on the great bodily injury enhancements as to count two, the DUI charge, violated double jeopardy because the jury found him guilty in count one, evading a peace officer, of

16

United States District Court
For the Northern District of California

1  causing serious injury to the same individuals, Pierce and Wadley.  He contends that he

2  was thus convicted and punished twice for causing the same injuries to the same people.

3      At sentencing, the trial court stated that count two, the DUI charge, would be the

4  primary offense, and it imposed the upper term of three years on that count, which it

5  doubled based on Edwards' prior strike offense.  As noted above, the court then imposed a

6  five-year term on count one, evading a peace officer, to run concurrently.  The court added

7  three years for each of the great bodily injury enhancements alleged as to count two as

8  pertained to Pierce and Wadley, for a total of six additional years.

9      ### 1.      State Court Ruling

10     The California Court of Appeal rejected Edwards' claim, noting that California Penal

11  Code § 12022.7, pertaining to great bodily injury, is a sentencing enhancement and not a

12  substantive offense.  It further noted that Edwards had not cited any authority that

13  precludes a defendant from being "convicted and punished for a substantive offense that

14  includes as an element conduct arguably equivalent to that found true for an *enhancement*

15  *to another offense.*"  The appellate court relied on the California Supreme Court's decision

16  in another case in concluding that Edwards' sentence did not violate double jeopardy.  *See*

17  *People v. Sloan*, 42 Cal.4th 110, 121 (Cal. Sup. Ct. 2007) (citing *Hudson v. United States*,

18  522 U.S. 93, 99 (1997), and noting that "the [United States] Supreme Court has made clear

19  that '[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal

20  punishments for the same offense. . . *and then only when such occurs in successive*

21  *proceedings*'").

22     The California court rejected Edwards' arguments otherwise, based on United States

23  Supreme Court law:

24      Defendant argues that the People present "far too broad a description" of the
       United States Supreme Court's interpretation of the Double Jeopardy Clause.
25      He quotes the high court's statement in *Missouri v. Hunter*, 459 U.S. 359
       (1983), that "[w]ith respect to cumulative sentences imposed on a single trial,
26      the Double Jeopardy Clause does no more than prevent the sentencing court
       from prescribing greater punishment than the Legislature intended." *Id.* at
27      366. Defendant ignores that the *Sloan* court's source for its description of the
       limited scope of the Double Jeopardy Clause was the United States Supreme

28

Court's discussion in *Hudson*, 522 U.S. 93, a case issued after *Missouri v. Hunter*, which cited the same page in *Missouri v. Hunter* from which defendant quotes, *Hudson*, 522 U.S. at 99. *Hudson*'s limitation of the Double Jeopardy Clause to "successive proceedings" controls. In any event, we must follow our [California] Supreme Court's understanding of the scope of the clause, as stated in *Sloan. Auto Equity Sales, Inc. v. Superior Court,* 57 Cal.2d 450, 455 (1962).

## 2.    Legal Standards

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  In *Benton v. Maryland*, 395 U.S. 784 (1969), its protections were held applicable to the states through the Fourteenth Amendment.  The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense.  *See Witte v. United States*, 515 U.S. 389, 395-96 (1995); *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The protection against multiple punishments is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature.  *See Garrett v. United States*, 471 U.S. 773, 793 (1985); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent.  *See Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983).  When the legislature intends to impose multiple punishments, as for example in a sentence enhancement for use of a firearm in the crime, there is no double jeopardy.  *Plascencia v. Alameda*, 467 F.3d 1190, 1204 (9th Cir. 2006) (California Penal Code § 12022.53 does not offend double jeopardy principles). In the federal courts, the "same elements" test, which asks "whether each provision requires proof of a fact which the other does not," ordinarily determines whether crimes are indeed separate and whether cumulative punishments may be imposed.  *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also Rutledge v.*

United States District Court

For the Northern District of California

*United States*, 517 U.S. 292, 297 (1996); *Ohio v. Johnson*, 467 U.S. at 499 n.8.  The *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature, however.  *Id.*

### 3.    Parties' Arguments

Edwards contends that the California Court of Appeal's determination that the Double Jeopardy Clause does not apply to sentencing enhancements was erroneous.  In support, while conceding that it was not a double jeopardy case, Edwards argues that the United States Supreme Court's decision in *Apprendi v. New Jersey*, mandates treating a sentencing enhancement as an element of the offense for double jeopardy purposes.  530 U.S. 466, 476 (2000).  He further argues that there is no "clear indication" by the California legislature that it intended to punish the same act under California Penal Code § 12022.7 and California Vehicle Code § 2800.3, and that "serious bodily injury," and "great bodily injury" under the two statutes, respectively, constitute the same offense.

Among other arguments, the state contends that the California legislature authorized cumulative punishment here for the evading peace officer offense and for the § 12022.7 sentencing enhancement on the DUI offense, and that under the United States Supreme Court's decision in *Hunter*, 459 U.S. at 368-69, the inquiry must end there.

### 4.    Analysis

The state appellate court's decision that no double jeopardy violation occurred was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  In *Hunter*, the Supreme Court made clear that the protection against multiple punishments for the same offense did not necessarily preclude cumulative punishments in a single prosecution.  459 U.S. at 366. The court notes that, applying *Hunter*, the Ninth Circuit has held that the enhancement of punishment of one charged offense, committed in the course of another charged offense, does not violate the Double Jeopardy Clause.  *Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998).  In *Williams*, the Ninth Circuit held in a habeas case that where a kidnaping

United States District Court

For the Northern District of California

1  sentencing enhancement was applied to one charge, forced oral copulation, at the same

2  time the petitioner was also convicted of a separate kidnaping offense, there was no double

3  jeopardy violation.  *Id.* at 743-44.

4       Moreover, as the Supreme Court has repeatedly held, even if the element(s) of the

5  crimes are the same under *Blockburger*, if it is evident that Congress or a state legislature

6  intended to authorize cumulative punishments, a federal court's inquiry is at an end.  *See*

7  *Johnson*, 467 U.S. at 499 n.8; *Hunter*, 459 U.S. at 369.  Here, contrary to Edwards'

8  assertion otherwise, there is evidence that by enacting § 12022.7, the California legislature

9  intended to authorize additional punishment, such as the sentence that occurred in

10  Edwards' case.  Section 12022.7 plainly provides for a three-year sentencing enhancement

11  where one personally inflicts great bodily injury on any person other than an accomplice in

12  the commission of a felony.  *See People v. Guzman*, 77 Cal.App.4th 761, 765 (Cal. Ct.

13  App. 2000) ("[s]ection 12022.7 is a legislative attempt to punish more severely those crimes

14  that actually result in great bodily injury").

15       Finally, the court rejects Edwards' argument that *Apprendi*, which did not even

16  concern the Double Jeopardy Clause, requires a different result.  530 U.S. at 476.

17       Accordingly, the California Court of Appeal's decision denying relief was not

18  unreasonable, and Edwards is not entitled to relief on his double jeopardy claim.

19                                   **CONCLUSION**

20       For the foregoing reasons, Edwards' petition for a writ of habeas corpus is **DENIED**.

21  The clerk shall close the file.

22                         **CERTIFICATE OF APPEALABILITY**

23       To obtain a COA, Edwards must make "a substantial showing of the denial of a

24  constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

25  constitutional claims on the merits, the showing required to satisfy § 2253(c) is

26  straightforward.  "The petitioner must demonstrate that reasonable jurists would find the

27  district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

28

20

*McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.  Here, the court finds that the two issues presented by Edwards in his petition meet the above standard and accordingly GRANTS the COA as to those issues.  *See generally Miller-El v. Cockrell*, 537 U.S. at 322. Those issues are:

(1) that his Due Process rights were violated because the phrase "great bodily injury" as defined by California Penal Code § 12022.7 is unconstitutionally vague on its face and as applies to him; and

(2)  that the Fifth Amendment Double Jeopardy Clause was violated because he was convicted and punished twice for causing the same injuries to the same people.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals.  *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

**IT IS SO ORDERED.**

Dated: June 18, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

21